RIDOUT & LYON, LLP
CHRISTOPHER P. RIDOUT (State Bar No. 143931)
    Email: c.ridout@ridoutlyonlaw.com
DEVON M. LYON (State Bar No. 218293)
    Email: d.lyon@ridoutlyonlaw.com
CALEB LH MARKER (State Bar No. 269721)
    Email: c.marker@ridoutlyonlaw.com
555 E. Ocean Blvd., Suite 500
Long Beach, California 90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

Attorneys for Plaintiff,
**JASON MCCORD**

FILED
2012 MAR 22 PH 1:55
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

EUGENE MOORE,, an individual

Plaintiff,

vs.

MERCK & CO., INC. and MERCK
SHARPE & DOHME CORP. and DOES
1-20, Inclusive,

Defendants.

CASE NO: CV12 · 2470 PA (VBKx)

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Plaintiff, Eugene Moore ("Plaintiff"), by and through his undersigned

Counsel, and for his Complaint against the Defendants Merck & Co., Inc. and Merck

Sharpe & Dohme Corp. (collectively "Defendants"), alleges as follows:

## NATURE OF THE CASE

1.     This is an action for damages suffered by Plaintiff as a direct and

proximate result of Defendant's wrongful conduct in connection with the

development, design, testing, labeling, packaging, promoting, advertising, marketing,

distribution, and selling of Defendants' prescription medication Propecia.

2.     Defendants manufacture and sell Propecia as a prescription treatment

for androgenic alopecia.

3.     Defendants knew or should have known that Propecia, when taken as prescribed and intended, causes and contributes to an increased risk of persistent and/or permanent serious and dangerous side effects including, without limitation, cognitive impairment, development of depression, and various forms of sexual dysfunction such as erectile dysfunction, reduced ejaculate volume, diminished or reduced libido, reduced sexual sensation and/or infertility ("sexual dysfunction") even after discontinuation of use.

## JURISDICTION

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as a substantial number of the events, actions or omissions giving rise to Plaintiff's claims occurred in this district. At all times material hereto, Defendants conducted substantial business in this district.

## PARTIES

6.     Plaintiff is a citizen of the state of California, and a resident of Manhattan Beach, California.

7.     Upon information and belief, Defendant Merck & Co., Inc. is a corporation organized and existing under the laws of New Jersey, and has its principal place of business located in Whitehouse Station, New Jersey.

8.     Upon information and belief, Defendant Merck Sharpe & Dohme Corp. is a corporation organized and existing under the laws of New Jersey, and has its principal place of business located in Whitehouse Station, New Jersey.

9.     At all times relevant herein, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and sold the prescription drug Propecia in interstate commerce and throughout the Central District of California. At all times

1  relevant herein, Defendants were registered to do business in the Central District of

2  California.

3      10.    Plaintiff is ignorant of the true names and capacities of defendants sued

4  herein as DOES 1 through 20, inclusive, and each of them, and therefore sues said

5  defendants by such fictitious names. Plaintiff will amend this complaint to allege the

6  true names and capacities of said defendants when ascertained. Plaintiff is informed

7  and believes, and based thereon alleges that each of said fictitiously named

8  defendants acted intentionally, negligently, and/or recklessly or is responsible in

9  some manner for the occurrences herein alleged, and that each of the violations of

10 Plaintiff's rights as herein alleged were proximately and legally caused by said

11 defendants' actions.

## GENERAL FACTUAL ALLEGATIONS

12

13     11.    Finasteride was initially developed to treat patients with symptoms of

14 benign prostatic hyperplasia ("BPH"), and then later approved for the treatment of

15 androgenic alopecia, also know as male pattern hair loss.

16     12.    Male pattern hair loss affects 30% of men by the age of 30 years and

17 50% of men by the age of 50 years. Men who suffer from hair loss may be perceived

18 as older and less physically and socially attractive.

19     13.    Male pattern hair loss is a common condition thought to be caused by a

20 combination of genetic factors and a hormone called dihydrotestosterone ("DHT").

21     14.    DHT is a substance in the body that can shrink hair follicles until a

22 person no longer has hair on top of his head.

23     15.    Finasteride is a 5-alpha reductase inhibitor that decreases the conversion

24 of testosterone to DHT, therefore, preventing hair loss.

25     16.    Propecia, or finasteride, may produce undesirable side effects to patients

26 who use the prescription drug, including but not limited to, sexual dysfunction and

27 cognitive impairment.

28

17.    The rates of the sexual dysfunction as a result of finasteride are reported to be as high as 39% in published clinical studies. In addition, it has been reported in 2003 that only 50% of patients experience resolution of their sexual function adverse events after discontinuation of finasteride.

**PROPECIA LABEL AND SIDE EFFECTS**

18.    The U.S. Food and Drug Administration ("FDA") initially approved finasteride in 1992 under the brand name Proscar as a treatment for BPH. Proscar is the brand name of the five (5) milligram tablet of finasteride.

19.    In 1997, the FDA approved Propecia as a one (1) milligram tablet of finasteride for prescription use as a cosmetic treatment for male pattern hair loss.

20.    Over one million people in the United States have used Propecia since introducing the prescription drug into the U.S. market.

21.    Defendants promote the use of Propecia for treatment of male pattern hair loss as a safe treatment with minimal risk. In its product labeling, Defendants represent that a limited number of users may experience side effects including sexual dysfunctions such as decreased libido, erectile dysfunction, and ejaculation disorder as well as potential depression.

22.    In 2006, the Swedish Medical Products Agency began investigating reports of persistent sexual dysfunctions that continued in men despite discontinuing Finasteride.

23.    In 2008, Defendants changed the Propecia label in Sweden to include the following warning:

In addition, the following have been reported in post-marketing use: persistence of erectile dysfunction after discontinuation of treatment with PROPECIA.

24.    In August 2009, the Swedish Medical Products Agency concluded that Propecia could lead to permanent erectile dysfunction.

25.    Upon information and belief, Defendants have also changed the Propecia label in other European countries, including the United Kingdom and Italy, to include a warning of persistent and/or permanent erectile dysfunction after discontinuation of treatment

26.    The Medicine Health Care Products Regulatory Agency public assessment report on the risk of finasteride published in December of 2009 stated that, "In addition, the following have been reported in post-marketing use: persistence of ED after discontinuation of treatment with PROPECIA." (Section 4.8 Undesirable Effects).

27.    According to the FDA's website, Defendants have updated the Propecia label in the United States nine times since introducing the drug into the market, and none of the label revisions have included a warning regarding persistent and/or permanent sexual dysfunction in patients that discontinued use of the prescription drug.

28.    In April of 2011, Defendants updated its "Patient Information about Propecia" insert to indicate patients have reported "difficulty in achieving an erection that continued after stopping the medication." Upon information and belief, Defendants updated insert is the first warning it gave to patients in the U.S. regarding persistent and/or permanent sexual dysfunction after discontinuation of use.

29.    Upon information and belief, the Propecia label distributed in the United States continues to fail to warn users of persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use.

## SPECIFIC FACTUAL ALLEGATIONS

30.    On or about June 2007, Plaintiff Eugene Moore was 42 years of age when he was prescribed and began consuming Propecia for male pattern hair loss. From June 2007 through approximately October 2009, Plaintiff was regularly prescribed and consumed Propecia.

1    31.    Prior to using Propecia, Plaintiff did not suffer from sexual dysfunctions

2  or cognitive impairment. However, while consuming Propecia, Plaintiff began to

3  suffer severe sexual dysfunction and cognitive impairment. Plaintiff's adverse effects

4  continued after Plaintiff discontinued using Propecia.

5    32.    To date, Plaintiff continues to suffer from adverse side effects, including

6  but not limited to, sexual dysfunction and cognitive impairment. As a direct and

7  proximate cause of his Propecia-induced side effects, Plaintiff has suffered

8  significant pain and suffering, and his quality of life has been severely diminished.

9                          **FRAUDULENT CONCEALMENT**

10    33.    Any applicable statutes of limitations have been tolled by the knowing

11  and active concealment and denial of material facts known by each defendant when

12  it had a duty to disclose those facts. Each defendant has kept plaintiff ignorant of

13  vital information essential to its pursuit of these claims, without any fault or lack of

14  diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff's part in

15  filing a complaint on their causes of action. Each defendant's fraudulent concealment

16  did result in such delay. Plaintiff could not reasonably have discovered these claims

17  until shortly before filing his original complaint.

18    34.    Each defendant was under a continuing duty to disclose the true

19  character, quality, and nature of its drug that Plaintiff ingested, but instead concealed

20  them. As a result, each defendant is estopped from relying on any statute of

21  limitations defense.

22                          **FIRST CAUSE OF ACTION**

23                             **(STRICT LIABILITY)**

24    35.    Plaintiff incorporates by reference each and every paragraph of this

25  Complaint as if fully set forth herein and further alleges as follows:

26    36.    At all relevant times hereto, Defendants were engaged in the

27  development, testing, manufacturing, marketing and sales of Propecia. Defendants

28  designed, manufactured, marketed, and sold Propecia to medical professionals and

1    their patients, knowing it would be ingested for the treatment of male pattern hair

2    loss.

3          37.    Propecia as designed, manufactured, marketed and sold by Defendants

4    reached Plaintiff without substantial change in its condition and was used by Plaintiff

5    in a reasonably foreseeable and intended manner.

6          38.    Propecia was "defective" and "unreasonably dangerous" when it entered

7    the stream of commerce and was received by Plaintiff, because it was dangerous to

8    an extent beyond that which would be contemplated by the ordinary consumer. At no

9    time did Plaintiff have reason to believe that Propecia was in a condition not suitable

10   for its proper and intended use among patients.

11         39.    Propecia was used in the manner for which it was intended, that is, for

12   treatment of male pattern hair loss. This use resulted in injury to Plaintiff.

13         40.    Plaintiff was not able to discover, nor could he have discovered through

14   the exercise of reasonable care, the defective nature of Propecia. Further, in no way

15   could Plaintiff have known that Defendants had designed, developed, and

16   manufactured Propecia in such a way as to increase the risk of harm or injury to the

17   recipients of Propecia.

18         41.    Propecia is defective in design because of its propensity to cause

19   persistent and/or permanent sexual dysfunction side effects and other indefinite

20   injuries after discontinuation of use.

21         42.    Propecia is unreasonably dangerous because it was sold to Plaintiff

22   without adequate warnings regarding, *inter alia,* the propensity of Propecia to cause

23   persistent sexual side effects after discontinuation of use; the post-marketing

24   experience with Propecia; and the numbers of persistent sexual adverse events

25   reported.

26         43.    Defendants failed to develop and make available alternative products

27   that were designed in a safe or safer manner, even though such products were

28   feasible and marketable at the time Defendants sold Propecia to Plaintiff.

44.     Defendants had knowledge and information confirming the defective and dangerous nature of Propecia. Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff and his physicians that Propecia causes serious persistent and/or permanent injuries including, without limitation, sexual dysfunction and cognitive impairment after discontinuation of use.

45.     As a direct and proximate result of Defendants' wrongful conduct, including Propecia's defective and dangerous design and inadequate warnings, Plaintiff has sustained and will continue to sustain severe and debilitating injuries, pain and suffering, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (NEGLIGENCE)

46.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

47.     At all relevant times, Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, marketing, sale, and distribution of Propecia, including a duty to ensure that Propecia did not pose a significantly increased risk of persistent and/or permanent injury to its users.

48.     Defendants had a duty to exercise reasonable care in the advertising and sale of Propecia, including a duty to warn Plaintiff and other consumers, of the dangers associated with the consumption of Propecia that were known or should have been known to Defendants at the time of the sale of Propecia to the Plaintiff.

49.     Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of Propecia because Defendants knew or should have known that Propecia had a propensity to cause serious injury,

1  including persistent and/or permanent sexual dysfunction and cognitive impairment
2  after discontinuation of use.

3      50.   Defendants failed to exercise ordinary care in the labeling of Propecia
4  and failed to issue adequate pre-marketing or post-marketing warnings to prescribing
5  doctors and the general public regarding the risk of serious injury, including, without
6  limitation, persistent and/or permanent sexual dysfunction side effects and cognitive
7  impairment after discontinuation of use.

8      51.   Defendants knew or should have known that Plaintiff could foreseeably
9  suffer injury as a result of Defendants' failure to exercise ordinary care as described
10  above.

11      52.   Defendants breached their duty of reasonable care to Plaintiff by failing
12  to exercise due care under the circumstances.

13      53.   As a direct and proximate result of Defendants' acts and omissions,
14  including their failure to exercise ordinary care in the design, formulation, testing,
15  manufacture, sale, and distribution of Propecia, Plaintiff ingested Propecia and
16  suffered severe and debilitating injuries, pain and suffering, and economic loss, and
17  other damages including, but not limited to, cost of medical care, rehabilitation, and
18  treatments for depression, emotional distress, and anxiety, for which he is entitled to
19  compensatory and equitable damages and declaratory relief in an amount to be
20  proven at trial.

21  **THIRD CAUSE OF ACTION**
22  **(BREACH OF IMPLIED WARRANTIES)**

23      54.   Plaintiff incorporates by reference each and every paragraph of this
24  Complaint as if fully set forth herein and further alleges as follows:

25      55.   Defendants designed, formulated, tested, manufactured, marketed, sold,
26  and distributed Propecia as has previously been alleged and described herein.

27      56.   At the time Defendants marketed, sold and distributed Propecia,
28  Defendants knew of the use for which Propecia was intended and impliedly

1  warranted that Propecia was merchantable, safe and fit for its intended purpose:

2  namely that Plaintiff could ingest Propecia without the risk of serious persistent

3  and/or permanent sexual dysfunction and cognitive impairment after discontinuation

4  of use.

5      57.    Plaintiff, foreseeable user of Propecia, and Plaintiff's physician(s),

6  reasonably relied upon Defendants' judgment and implied warranties in purchasing

7  and consuming Propecia as intended.

8      58.    Propecia was defective, unmerchantable, and unfit for ordinary use

9  when sold, and subjected Plaintiff to severe and permanent injuries.

10     59.    Defendants breached their implied warranties because Propecia was and

11  continues to be neither of merchantable quality nor safe for its intended use in that

12  Propecia has the propensity to cause persistent sexual dysfunction and other bodily

13  harm after discontinuation of use.

14     60.    As a direct and proximate result of Defendants' breach of the implied

15  warranties of merchantability and fitness for its intended purpose, Plaintiff ingested

16  Propecia and suffered severe and debilitating injuries, pain and suffering, and

17  economic loss, and other damages including, but not limited to, cost of medical care,

18  rehabilitation, and treatments for depression, emotional distress, and anxiety, for

19  which he is entitled to compensatory and equitable damages and declaratory relief in

20  an amount to be proven at trial.

21                    **FOURTH CAUSE OF ACTION**

22                  **(BREACH OF EXPRESS WARRANTY)**

23     61.    Plaintiff incorporates by reference each and every paragraph of this

24  Complaint as if fully set forth herein and further alleges as follows:

25     62.    Defendants through their marketing program, promotional activities,

26  product labeling, package inserts, and other written and verbal assurances expressly

27  warranted to physicians and consumers, including Plaintiff and/or his physicians,

28  that Propecia had been shown by scientific study to be safe for its intended use.

63.     Plaintiff, and/or his physicians, reasonably relied upon Defendants' express warranties in purchasing consuming, and prescribing Propecia.

64.     Defendants breached their express warranties because Propecia as manufactured and sold by Defendants does not conform to these express representations in that Propecia has a propensity to cause persistent sexual function and other bodily harm after discontinuation of use.

65.     As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff ingested Propecia and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (FRAUD)

66.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

67.     Defendants were under a duty and failed to discharge their duty to exercise reasonable care to disclose to Plaintiff and his doctors the defective nature and risks that Propecia can cause severe and permanent injuries, including, without limitation, persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use, of which they had special knowledge not available to Plaintiff or his doctors, and as to which they made affirmative representations in violation of all applicable laws, and concealed material facts relating to the defective nature and risks of Propecia, which were peculiarly within its knowledge, knowing that Plaintiff and his doctors would rely on the presumption that no such facts exist.

68.     Defendants knew that Propecia can cause severe injuries, including, without limitation, persistent and/or permanent sexual dysfunction and cognitive impairment; indeed, Defendants knew that persistent and/or permanent sexual side

effects associated with Propecia had occurred for years. Defendants had actual knowledge at the time of sale of Propecia to the Plaintiff that Propecia created a risk of serious bodily injury to its users, including, without limitation, persistent sexual dysfunction side effects and cognitive impairment, based, in part, upon test results, studies, adverse reaction reports, regulatory action in foreign countries, published reports, and their own clinical trials and post-marketing surveillance of Propecia and its generic form, Finasteride.

69.    At all times during the course of dealing between Defendants and Plaintiff, Defendants knowingly and recklessly omitted and concealed information peculiarly within their knowledge to the Plaintiff, his doctors, the scientific community and to the general public - e.g., the dangers of Propecia, including the special risk of persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use - knowing that the scientific community, the general public, the Plaintiff and his doctors, would rely on the presumption that the dangers did not exist.

70.    Defendants actively concealed from the Plaintiff, his doctors, the scientific community and the general public:

      i.     that their own test results, published studies, and/or clinical trials showed a risk of serious injuries associated with Propecia including, without limitation, persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use; and/or

      ii.    that Propecia was not adequately tested for persistent and/or permanent sexual dysfunction or cognitive impairment before or after its introduction on the market; and/or

      iii.   that Propecia was, in fact, unsafe as it posed a risk of persistent and/or permanent injury which outweighed any purported benefits.

71.   Defendants misrepresented that Propecia was safe and effective for its intended uses by affirmative misrepresentation, and/or active concealment and omission of material facts regarding the safety and effectiveness of Propecia, and by their course of conscious or intentional conduct succeeded in selling and marketing a drug with persistent and/or permanent adverse effects to be ingested by Plaintiff. Defendants intentionally omitted, concealed and/or suppressed this information from consumers, including Plaintiff and his doctors, in order to avoid losses in sales to consumers and market share to its major competitors.

72.   Moreover, Defendants engaged in an aggressive marketing strategy, which included false representations regarding the adverse side effects of Propecia to create the impression and to convey to Plaintiff and the general public that:

    i.    Propecia had a favorable safety profile and was fit for human consumption;

    ii.    the benefits of taking Propecia outweighed any associated risks; and

    iii.    the use of Propecia was safe and had fewer adverse health and side effects than were known or should have been known by Defendants at the time of these representations.

73.   The omissions, misrepresentations and concealment described in the preceding paragraphs occurred, without limitation, in the Propecia warning labels, advertisements and promotional materials, in the Defendants funded or created scientific reports, and the failure to provide other special notification of the dangers of Propecia to the Plaintiff or his physicians, for example, Dear Doctor letters. The Defendants' statements omitted, concealed, and misrepresented the dangers of serious injury, including, but not limited to, persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use to Plaintiff and his prescribing doctors.

74.     Defendants engaged in fraud by deliberately and affirmatively concealing and failing to disclose adverse reactions of Propecia to Plaintiff, his doctors, the scientific community, and the general public, and by disseminating only positive and misleading scientific data, and by concealing scientific data that showed increased risk of persistent and/or permanent injury after discontinuation of use, to Plaintiff, his doctors, the scientific community, and the general public.

75.     Plaintiff, and his prescribing physician, relied on the warning labels as they appeared in the patient package insert at the time they prescribed or consumed Propecia. The applicable warnings concealed and omitted material facts relating to the defective nature and risks of Propecia. These dangers were peculiarly within the Defendants' knowledge, and were omitted and concealed knowing that Plaintiff and his doctors would rely on the presumption that no such facts exist.

76.     Defendants knew or should have known that their representations and omissions regarding the safety of Propecia were, in fact, false and/or misleading, and actively made such representations and omissions with the intent, design, and purpose that Plaintiff and others, including prescribing physicians, rely on these representations leading to the prescription, purchase and consumption of Propecia.

77.     At all times herein, Plaintiff and his physicians were unaware of the dangers of Propecia with respect to persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use, and were reasonably misled by the Defendants' omission of information about this danger.

78.     At all times herein, Plaintiff and his physicians were unaware of the falsity underlying Defendants' statements and reasonably believed Defendants' false statements about the safety and efficacy of Propecia to be true.

79.     Plaintiff and his doctors could not have discovered Defendants' fraudulent and misleading conduct at an earlier date through the exercise of reasonable diligence because Defendants actively concealed their deceptive, misleading and unlawful activities.

80.     Plaintiff and his physicians did, and could be expected to, reasonably and justifiably rely on Defendants' representations and omissions because Defendants held themselves out as having expertise and specialized knowledge in the pharmaceutical industry.

81.     Plaintiff justifiably relied upon to his detriment and/or was induced by Defendants' false statements and active concealment over the safety of Propecia, in part, because at no time did Plaintiff or his physicians have the knowledge or expertise necessary to independently evaluate the safety of Propecia.

82.     Defendants' misrepresentations, concealment, suppression and omissions were made willfully, wantonly, uniformly, deliberately, or recklessly, in order to induce Plaintiff to purchase Propecia and Plaintiff and his physicians did reasonably and justifiably rely upon the material misrepresentations and missions made by the Defendants about Propecia when agreeing to purchase and/or ingest Propecia.

83.     As a direct and proximate result of Defendants' false representations and/or active concealment of material facts regarding the safety and efficacy of Propecia, Plaintiff ingested Propecia and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF California Business and

### Professions Code § 17200, et seq.)

84.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

85. Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of Propecia.

86. Had the Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for Propecia, and would not have incurred related medical costs. Specifically, Plaintiff, his physician, and his staff were misled by the deceptive conduct described herein.

87. Defendants' deceptive, unconscionable, and/or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statute listed below.

88. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for Propecia that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

89. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representation in violation of California Business and Professions Code § 17200, et seq.

90. Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create a demand for and sell Propecia. Each aspect of Defendants' conduct combined to artificially create sales of Propecia.

91. The medical community relied upon Defendants' misrepresentations and omissions in determining to use Propecia.

92. By reason of the unlawful acts engaged in by Defendants, Plaintiff has suffered ascertainable loss and damages.

93. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff was damaged by paying in whole or in part for Propecia.

1    94.    As a direct and proximate result of Defendants' violations of the District

2    of Columbia's unfair trade practice acts, Plaintiff has sustained economic losses and

3    other damages for which he is entitled to statutory and compensatory damages, and

4    declaratory relief, in an amount to be proven at trial.

5                        **SEVENTH CAUSE OF ACTION**

6             **(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

7    95.    Plaintiff incorporates by reference each and every paragraph of this

8    Complaint as if fully set forth herein and further alleges as follows:

9    96.    Defendants carelessly and negligently manufactured, marketed, and sold

10   Propecia to Plaintiff, carelessly and negligently concealed these defects from

11   Plaintiff, and carelessly and negligently misrepresented the quality and safety of

12   Propecia.  Defendants should have realized that such conduct involved an

13   unreasonable risk of causing emotional distress to reasonable persons, that might, in

14   turn, result in illness or bodily harm.

15   97.    Defendants owed a duty to treating physicians and Plaintiff to

16   accurately and truthfully represent the risks of Propecia. Defendants breached that

17   duty by misrepresenting and/or failing to adequately warn of the risks of Propecia –

18   effects of which Defendants knew or in the exercise of diligence should have known

19   – to the treating physicians and Plaintiffs.

20   97.    As a direct and proximate result of Defendants' wrongful conduct and

21   breach of duty, Plaintiff has sustained and will continue to sustain severe emotional

22   distress either due to physical injury or a rational fear of physical injury and is

23   entitled to recovery of damages in an amount to be proven at trial. Defendants are

24   liable to Plaintiffs jointly and/or severally for all general, special and equitable relief

25   to which Plaintiff is entitled by law in an amount to be proven at trial.

26   / / /

27   / / /

28

1    **WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and

2    severally, as follows:

3        1.    Compensatory damages, in excess of the amount required for federal

4    diversity jurisdiction, and in an amount to fully compensate Plaintiff for all his

5    injuries and damages, both past and present;

6        2.    Special damages, in excess of the amount required for federal diversity

7    jurisdiction and in an amount to fully compensate Plaintiff for all of his injuries and

8    damages, both past and present, including but not limited to, past and future medical

9    expenses, costs for past and future rehabilitation and/or home health care, lost

10   income, permanent disability, including permanent instability and loss of balance,

11   and pain and suffering.

12       3.    Punitive and/or exemplary damages for the wanton, willful, fraudulent,

13   reckless acts of Defendant who demonstrated a complete disregard and reckless

14   indifference for the safety and welfare of the general public and to Plaintiff in an

15   amount sufficient to punish Defendant and deter future similar conduct

16       4.    Double or triple damages as allowed by law;

17       5.    Attorneys' fees, expenses, and costs of this action;

18       6.    Pre-judgment and post-judgment interest in the maximum amount

19           allowed by law; and

20       7.    Such further relief as this Court deems necessary, just, and proper.

21   ///

22   ///

23

24

25

26

27

28

1

## JURY DEMAND

2      Plaintiff demands a trial by jury of all claims asserted in this Complaint.

3

4  Dated: March 22, 2012              RIDOUT & LYON, LLP

5

6                    By: _____
                          CHRISTOPHER P. RIDOUT, ESQ.

7                          DEVON M. LYON, ESQ.

8                       TIMOTHY J. BECKER, ESQ.
                       JOHNSON BECKER, PLLP

9                       33 South 6th Street, Suite 4530
                       Minneapolis, MN  55402

10                    Phone:  (612) 436-1800
                     Fax:  (612) 436-1801

11                    Email:  tbecker@johnsonbecker.com

12                    Counsel for Plaintiff,
                     **EUGENE MOORE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV12- 2470 PA (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:

Christopher P. Ridout, Esq. (SBN 143931)
RIDOUT & LYON, LLP
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE MOORE, an individual<br><br>PLAINTIFF(S)<br><br>v.<br><br>MERCK & CO., INC. and MERCK SHARPE &<br>DOHME CORP. and DOES 1-20, Inclusive,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12·2470 PA (VbKx)<br><br>SUMMONS |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Christopher P. Ridout, Esq. _____, whose address is Ridout & Lyon, LLP, 555 E. Ocean Blvd., Suite 500, Long Beach, CA, 90802 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    MAR 2 2 2012 _____       By: _____ SHEA BOURGEOIS ____ SEAL

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

EUGENE MOORE

**DEFENDANTS**

MERCK & CO, INC. AND MERCK SHARPE & DOHME CORP.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Christopher P. Ridout, Esq., RIDOUT & LYON, LLP, 555 E. Ocean Blvd., Suite 500, Phone: (562) 216-7380

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $** 75,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S. § 1332; Product liability claim arising out of the sale & distribution of the pharmaceutical drug Propecia.

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise
REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☑ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability
IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

TORTS
PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability
BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157
CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition
FORFEITURE / PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act
PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark
SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

CV12·2470

**FOR OFFICE USE ONLY:** Case Number:

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, CA | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Hunterdon County, NJ |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, CA | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date March 22, 2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |